The opinion of the court was delivered by
DeBlanc, J.
On the 14th of October, 1852, and by act under private signature, plaintiff granted to the New Orleans, Opelousas and Great Western Railroad Company, a right of way through his land. The extent of that right is fixed in the act of 1852, the first and principal clause of which is as follows :
“ Be it known and remembered, that whereas the New Orleans, Opelousas and Great Western Railroad Company are now locating and about constructing their railroad, beginning in the town of Algiers, and whereas said line of road passes through the land or plantation owned by the undersigned, and whereas the construction of said railroad by the President and Directors of the New Orleans, Opelousas and Great Western Railroad Company through our said land or property, mil add to its value: therefore, in consideration thereof, and the pridé we take in so great a work, to the honor of our State, the undersigned do agree and do hereby donate and grant, free of all damage or costs, the right of way for the said railroad through the said land or plantation, unto the president, directors and company, and to their successors in office, in conformity with their charter, as long as the same may be required for the use of the company, and no longer; it being agreed and understood that no more land is to be reserved for the use of said road than is absolutely necessary for the convenient and safe transit of the locomotives and cars, over as many tracks of rails as the business of the com *550 pany may requirealso, there is hereby granted a sufficient quantity of land for a station-house, water-tank, or depot, not exceeding one acre of land on the immediate line of road, should the convenience of the road require it,” etc.
In 1875, Charles Morgan, who — in 1869 — had purchased the New Orleans, Opelousas and Great Western Railroad and its franchises, was about laying an additional track or switch on the land described in the act of the 14th of October, when he was enjoined, by plaintiff, from proceeding so to do, on the ground that he — plaintiff—is the owner of the land on which the track or switch was about being laid ; and that — unless enjoined as prayed for — defendant would cause him an irreparable injury.
The lower court dissolved the injunction provisionally granted to plaintiff, and he appealed.
To defeat the injunction, defendant relies on the act of the 14th of October 1852, which — on the 12th of December, 1874, and without alleging any reason for the course which he then pursued, plaintiff attempted to revoke by an act passed before a notary of this city. He — in that act —acknowledged that, in 1852, he made a valid donation to the railroad company, then denied the validity of what he calls “ the pretended donation,” and concluded by the declaration that, if it was ever validly made, he revokes it and resumes the full and unimpaired ownership of his land.
In his pleadings, the only facts alleged by plaintiff to obtain the injunction, are: that he is the owner of the land on which defendant was —at that time' — preparing to lay an additional railway. He — in no part of those pleadings — alludes to what he himself styled a valid donation, nor to its attempted revocation, nor to the nature of the irreparable injury which he swore he would suffer on account of the proposed construction' of a switch on his land.
In the brief submitted by his counsel, he contends:
1. That the donation made by him to the railroad company, has none of the requisites prescribed by the Civil Code, and — for that reason —is stricken with nullity.
2. That — if it is not null — the company has, some twenty five years ago, exhausted the rights acquired under the donation, when it laid its first track on the land.
3. That said donation never was accepted according to law.
4. That — if it was accepted, it merely imposed a servitude, which has been extinguished by its non-usage for more than ten years.
1. Does the act of the 14th of October evidence a grant, or — as urged — a donation inter vivos ? It recites that Eazende — in consideration of the value it would add to his land, and the pride which he took *551 in the great work then contemplated and long since executed, donated and granted, free of all damage and costs, the right of way through said land, no more of which was to be reserved than is absolutely necessary for the convenient and safe transit of the locomotives and cars over as many tracks of rails as the business of the company may require, and he also granted a sufficient quantity of land for a station-house, water-tank; or depot.
The act of 1852 does not evidence either a gratuitous, onerous or remunerative donation, but a grant of the use of the quantity of land absolutely necessary for the purposes therein specified. As to the consideration of that grant, it was the reasonable hope expressed by the owner, that the railway — when built — would a'dd to the value of, and benefit the very tract from which the necessary quantity was to be taken by the company. Such a consideration is undoubtedly valid, when the owner himself declares it to be, and accepts it as sufficient; and — in several of our States — is now regarded in fixing the compensation to be allowed in eases of expropriation.
Southern Law Review, April, May, 1879, pp. 37 and 38, and authorities therein cited.
In the act from Fazende to the company, what did he expresslygive and grant ? The use of a certain quantity of land for the safe and convenient transit of locomotives and cars, on as many tracks of rails as the business of the company may require — and, besides, for a station-house, water-tank, or depot. The importance of this grant can not be underrated, but its importance flows from plaintiff’s consent, and a right acquired from one who had the capacity to contract, can not be destroyed for the sole reason that it was imprudently conceded.
2. The evidence taken on the trial does not sustain the defence that the rights granted by the act of 1852 have been exhausted: but one track of rails has been laid on the land, and — according to the terms of the act — the privilege allowed is that of “ laying as many tracks of rails as the business of the company may require, and of building a station-house, water-tank, or depot.”
Does the business of the company require the additional track, the construction of which has been enjoined by plaintiff?
The superintendent of the railroad swore that the additional track is of paramount necessity, and his assistant that it is- necessary to a proper running of the trains. Their declarations stand uncontradicted by either Mr. Fazende or his son, who both testified in his behalf.
As to the company’s acceptance of the entire grant of the 14th of October 1852, though not evidenced by an act passed before a notary and two witnesses, it has been — for upwards of twenty five years — and still is daily proclaimed by the whistles, the bells and rattling of its *552 trains, and that acceptance can not be restricted to exclusively those clauses of the contract which have already been executed, but extends to and embraces those clauses, the execution of which was made to depend on the happening of a suspensive condition.
The prescription of ten years is invoked, but in exclusively the brief of appellant; and — were it applicable — could not be considered.
We believe, as does plaintiff’s counsel, that the right of property should be sacredly protected against caprice and speculation, and that not an inch of land should be subjected to a servitude, until the owner has first received an equivalent for that which he surrenders — nay more: we believe as did the eminent English statesman who said: “There stands the poor man’s cottage; the rains of summer and the snows of winter may enter its crevices, but the king of England, with all its forces, dare not enter the poor man’s cottage.”
That right which — on proper occasions — should be protected against the caprice of 'kings and States, the speculations of corporations and individuals, can not be protected against either the liberality or imprudence of freeholders.
As to the plaintiff’s apprehensions that, after the construction of the switch, his field and garden would be exposed to constant depredations, they may be unfounded. Were they hereafter verified, defendant might be made to realize that a servitude can not — with impunity — be converted into a nuisance, and must ever be exercised with a careful regard for the rights of others.
It is — therefore—ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.